## SWENTOSKY, In Re

Ohio Probate Court, Tuscarawas Co

Decided Dec 6, 1937

Wilken, Fisher & Limbach, New Philadelphia, for relator.

Reed & Reed, Uhrichsville, for respondents.

### OPINION

By LAMNECK, J.

This is a proceeding in habeas corpus brought by the relator, Helen Swentosky, a minor aged eighteen years, of Luciusboro, Pennsylvania, through her stepfather and next friend, Joseph Swentosky, to recover the custody of her illegitimate

child, Louise Ellen Swentosky, aged eighteen months, who the relator claims is being unlawfully detained by William and Ruth Meyers of 410 Cross Street, Uhrichsville, Ohio.

It appears from the evidence that Helen Swentosky came to the home of Mrs. Mary Burmich, an old friend, in Gnadenhutten, Ohio, with her child, from Luciusboro, Pennsylvania, the latter part of July 1937, in search of employment. Finding that she could not secure employment and keep her child, she made several unsuccessful attempts to place it. She left it for several days with Mrs. Ella Coen, and Mrs. Jennie Detterline, each of whom refused to keep it because the child cried for its mother. An attempt was also made to place it with a Mrs. Bessie Sanders, and in the Tuscarawas County Children's Home.

In making her attempts to place the child, she is alleged to have said on a number of occasions that she would "throw the child in the river" if she could not place it.

She finally left the child with Mrs. Walter Parrish, with instructions to give it to some good people to raise. Mrs. Parrish had the child for twelve days, and during this time she contacted Mr. and Mrs. William Meyers of Uhrichsville, Ohio, who agreed with Mrs. Parrish to keep it for adoption. About a week after the child was left with Mr. and Mrs. Meyers, Miss Swentosky visited the child and refused to leave it for adoption, but finally signed a document reading as follows:

"Sept. 2, 1937.

"I hereby agree to let Wm. Meyers & wife to board & room & care for my daughter, until she has graduated through high school. And the change of her name from Louise Ellen Swentosky to Louise Ellen Meyers.

Signed by Mother
Helen Swentosky

witnesses—

Miss Ann Burmich
Mrs. Geo. Burmich
Mrs. Ervin Detterline"

She then left for Cleveland where she had employment and remained there until several weeks ago, when she returned to her stepfather's home in Pennsylvania. She now asks that the child be returned to her care and keeping after it had been in the care and custody of Mr. and Mrs. Meyers for approximately three and one-half months.

While a parent's right to the custody

of a child is paramount to that of all other persons, it is not absolute under all circumstances. It may be relinquished by contract, forfeited by abandonment, or lost by being in a condition of total inability to afford it necessary care and support. (Clark v Boyer, 32 Oh St 299).

Did this mother relinquish her child by a valid contract? §8023 GC provides:

"All persons of the age of twenty-one years and upward, who are under no legal disability, shall be capable of contracting respecting goods, chattels, lands, tenements, and any other matter or thing which may be the legitimate subject of a contract, and, to all intents and purposes be of full age."

Under this section, no minor can make a valid contract unless it be for necessaries, or for some other purpose which the law permits. We know of no provision of the statute which permits a minor parent to contract away a child. §10512-11 GC permits a parent to give consent to adoption, and §1352-12 GC permits parents to place children with the State Department of Public Welfare. While no age is mentioned in these sections, the consent of minor parents is sufficient because these sections place no limitation as to the age of parents. (In re Bush, 47 Kans. 264, 27 Pac. 1003, 1 C. J. 1386). As this is not an adoption case, or a placement with the State Department of Public Welfare, §8023 GC would thereby restrict a minor parent from making the contract in question.

In addition, §1352-13 GC prohibits the placing of any child under two years of age, either temporarily or permanently, with any person without the consent of the State Department of Public Welfare or by a commitment of a juvenile court. Neither of these requirements was complied with in this case.

Even if this could be held to be a voidable contract, a minor can avoid a voidable contract at the election of such minor at any time before or within a reasonable time after reaching majority. (Mestetzko v Elf Motor Co., 119 Oh St 575, 165 NE 93).

The court must therefore hold that the contract in question is invalid and can form no basis for a claim for holding said child.

The court does not believe that the circumstances in this case could be held to be

a case of abandonment, because the mother visited the home of Mr. and Mrs. Meyers a week after the child had been placed there; and entered into the alleged contract.

The only basis for which the court could refuse to grant the writ prayed for in this case would be on a finding that the relator is not a fit or suitable person to be entrusted with the care and education of her child. (In re Lutkehaus, 32 O.N.P. (N.S.) 120).

Courts have consistently refused parents to have the custody and control of their children when at the time of the application for such right, it was shown that because of immorality, viciousness, intemperance, criminal propensities or general unfitness of the parent seeking the custody, it would be dangerous and detrimental to the child's welfare to place it in the care of such parent.

In determining such question, all doubt must be resolved in favor of the parent. If the rights of parents were to be entirely subordinated to the welfare of their children, few families would be safe from the danger of losing their children.

Consequently, because a stranger or relative can furnish a child with better support and opportunity than its parent, such fact is not sufficient to deprive a parent of a child. (Stapleton v Poynter, 111 Ky. 264; Dunkin v Seifer, 123 Ia. 64). Even when a father has been convicted of a felony and served a term in prison, upon being pardoned and restored to citizenship, he cannot thereafter be deprived of his children for this reason alone. Nor can a parent be deprived of a child for past misconduct if there is no evidence to support an allegation of present unfitness.

Even when parents become financially unable to care for their children because of small earning capacity or lack of opportunity to work, a court cannot for that reason alone deprive a parent of the custody of a child.

The court does not question the fitness or suitability of Mr. and Mrs. Meyers to rear this child. The court believes that a great love and affection exists between the child and the respondents and the court is loath to interfere with this relationship.

But, under the law and the facts in the case, the rights of the relator are paramount to those of the respondents, because the respondents do not have legal custody under the laws of this state. To refuse the writ, the court would have to find that the child would be in physical danger; or, that the mother is immoral, vicious, criminal or intemperate; or that it would be taken to a depraved environment. The facts do not warrant such conclusion.

The court has been very much concerned over the alleged statement of the mother that she would drown her child. However, the court is satisfied that the child is in no physical danger, because of the belief that the alleged rash statements of the mother were made to gain sympathy for herself and her child. The court also believes that the home of the stepfather, where the child was born and lived for fourteen months, and where it is proposed to be taken, is on a par with the homes of those living in mining settlements.

A writ will therefore be allowed, as of 8 o'clock A. M. December 8, 1937.